IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division
No. 1:25-cv-00398-CMH-WEF

| | | |
|---|---|---|
| ANTONIO GREGORY BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OF LAW IN SUPPORT |
| | ) | OF NORTH CAROLINA DEFENDANTS' |
| COUNSELING AND FORENSIC | ) | MOTION TO DISMISS |
| SERVICES, INC, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

Plaintiff Antonio Brooks brings this federal lawsuit challenging aspects of his ongoing probation supervision. Specifically, Plaintiff objects to the requirement of a psychological evaluation imposed after his supervision was transferred from the State of North Carolina to the Commonwealth of Virginia under the Interstate Compact for Adult Offender Supervision. Although the precise nature of Plaintiff's claims is unclear, his filings appear to allege due process violations, improper dissemination of medical records, and speculative misuse of a psychological report by federal, state, and local authorities. He seeks injunctive relief, a protective order, and possibly declaratory relief based on constitutional and statutory violations.

This case is subject to dismissal for multiple independent reasons. First, the Court lacks personal jurisdiction over the North Carolina Defendants for several reasons

explained below. In addition, Plaintiff's claims are barred by the Eleventh Amendment, collateral estoppel, prosecutorial immunity, and the *Younger* abstention doctrine. Finally, Plaintiff's allegations fail to state any plausible violation of constitutional or federal law. For these reasons, the Complaint should be dismissed pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE CASE

On March 4, 2024, Plaintiff Antonio Brooks filed a Complaint and Request for Injunction. [DE 1] In his Complaint, he lists as Defendant #4 "North Carolina Department of Adult Supervision." [DE 1, p 2] He provides as the address for this Defendant "North Carolina Department of Public Safety Division of Adult Correction and Juvenile Justice, 831 West Morgan Street, Raleigh, NC 27699-4201." [*Id.*] Plaintiff lists as Defendant #6 "Union County District Attorney's Office." [*Id.*]

The Complaint itself does not contain any substantive material regarding Plaintiff's claims. [DE 1] Rather, the Complaint simply states repeatedly to "See Complaint Briefing Motion." [*Id.*] But there is no "Complaint Briefing Motion" filed in conjunction with Plaintiff's Complaint or found anywhere else on the docket in this matter.

Plaintiff did file several attachments to his Complaint. First, Docket Entry 1-2 contains what appear to be three documents: "Motion for In-Person Hearing, Proceeding Pro Se and In Forma Pauperis, and Leave to Correct Any Deficiencies in Initial Filings," "Motion for a Protective Order to Exclude Psychological Evaluation Results," and "Motion for a Protective Order and Dismissal of Probation Violation." [DE 1-2] However, each of these motions bears the caption of a state court case filed in the Circuit Court of the

2

Commonwealth of Virginia for the City of Alexandra. [*Id.*] The last two pages of Docket Entry 1-2 appear to be a complaint of some sort, though it is not clear this is the intended pleading, or a more generalized complaint.

## STATEMENT OF FACTS

### *The North Carolina Proceedings*[1]

On June 14, 2024, Plaintiff Antonio Brooks entered a plea of no contest in Union County Superior Court, North Carolina, to one count of disclosing private images of an adult in violation of N.C. Gen. Stat. § 14-190.5A(b), a Class H felony. [Exhibit 1, pp 41-46] Pursuant to a joint motion by Plaintiff and the State, the Court ordered a conditional discharge under N.C. Gen. Stat. § 15A-1341(a4) and placed him on eighteen (18) months of supervised probation. [*Id.* at 37-38] As part of the probationary conditions, Plaintiff was required to complete twenty-four (24) hours of community service within the first 120 days and comply with all general terms of probation under N.C. Gen. Stat. § 15A-1343(b). [*Id.*]

Supervision was initially transferred to Mecklenburg County, North Carolina, and subsequently to the Commonwealth of Virginia pursuant to the Interstate Compact for Adult Offender Supervision (ICAOS). [*Id.* at 38, DE 1-2, p 4] Consistent with the

---

[1] In order to assist the Court in understanding the relevant background, Defendants provide the factual summary based on publicly available court records accessed through the North Carolina Judicial Branch Portal (https://portal-nc.tylertech.cloud/Portal/ ) A copy of the court file *State v. Brooks*, Union County Superior Court File No. 23CR344255-890, is attached as Exhibit 1. The Case Summary is attached as Exhibit 2. The Court may consider this public record material without converting the present motion into one for summary judgment. *Papasan v. Allain*, 478 U.S. 265, 268, n. 1 (1986).

conditional discharge, the superior court did not enter judgment on Plaintiff's plea and instead ordered him to return to court on December 15, 2025, unless ordered to appear earlier for a hearing on any alleged violation. [Ex. 1, pp 37-38] The Union County Superior Court retains jurisdiction over Plaintiff until either 18 months of probation is successfully completed and the charge is dismissed under the conditional discharge, or probation is revoked, and judgment is entered. *See* N.C. Gen. Stat. § 15A-1341(a4).

On August 15, 2024, Plaintiff signed an agreement to comply with the terms of supervised probation, payment schedule, and waiver of extradition. [Ex. 1, p 36] Two months later, on October 16, 2024, the North Carolina Division of Community Supervision, a division of the North Carolina Department of Adult Correction, filed a Delegated Authority Violation Report, alleging that Plaintiff had failed to complete his community service within the required timeframe. [*Id.*at 34-35] The filed report contains Plaintiff's signed acknowledgement, affirming that he received a copy of the violation report, was informed of the nature of the non-compliance, and understood that his probation officer was exercising court-delegated authority under N.C. Gen. Stat. § 15A-1343(e) and (f) to impose additional conditions, including electronic monitoring and a curfew. [*Id.*] Plaintiff further acknowledged that he had been advised of his right to seek judicial review of the officer's action by filing a motion with the court, and that the new conditions would take immediate effect. [*Id.*] Plaintiff maintains that the delay in community service completion was not his fault but was instead due to administrative miscommunication and a failure by his probation officer to process a timely extension request. [*Id.* at 31]

On January 28, 2025, Plaintiff filed a motion in Union County Superior Court requesting court oversight of his probation and conditional discharge compliance, dismissal of his charges with prejudice, and appointment of counsel. [*Id.* at 30-33] In that motion, Mr. Brooks alleged that he had substantially complied with the conditions of his sentence, that his supervision had been marred by procedural irregularities and retaliatory conduct, and that both North Carolina and Virginia probation authorities had misapplied ICAOS to expand or alter his supervision unlawfully. [*Id.*] He further raised claims of ineffective assistance of counsel, withholding of legal representation, and retaliatory imposition of electronic monitoring based on permitted travel activities. [*Id.*]

A week later, on February 4, 2025, the State of North Carolina, through the Union County District Attorney's Office, issued a notice of hearing on Plaintiff's January 28, 2025, motion, setting the matter for hearing before the Union County Superior Court at 10:00 a.m. on April 14, 2025. [*Id.* at 28-29] On March 4, 2025, after the notice, but before the scheduled hearing, Plaintiff filed this lawsuit. [DE 1]

On March 26, 2025, Plaintiff filed multiple supplemental motions in Union County Superior Court. [Ex. 1, pp 4-27] First, Plaintiff filed a "Motion for Submission of Affidavits, Motion for Dismissal with Prejudice, and Request for Remedial Judicial Relief." [*Id.* at 21-27] In this motion, Plaintiff alleges violations of the Fourth Amendment, Eighth Amendment, Fourteenth Amendment, the North Carolina and Virginia Constitutions, 42 U.S.C. § 1983 and 18 U.S.C. §§ 241, 242, and the Violence Against Women Act, 34 U.S.C. §§ 12291 and 12491. Relevant to this matter, Plaintiff alleges that probation authorities in North Carolina and Virginia acted beyond the scope of their lawful

authority. [Ex. 1, p. 25, ¶ 26] Plaintiff contends his affidavit testimony supports his assertion that these authorities imposed electronic surveillance without authorization, coerced him into undergoing psychiatric evaluations, and submitted false reports. [*Id.*] Plaintiff further contends these actions were in direct contravention of the original terms of his probation and conditional discharge. [*Id.*] Plaintiff also asserts his claim that he was denied the right to appointed counsel in both Virginia and North Carolina proceedings. [*Id.* at 24, ¶¶ 22-23]

Plaintiff also filed two affidavits: "Affidavit Documenting Coercions & Denial of Legal Representation" dated February 17, 2025 [Ex. 1, p 17]; and "Affidavit Documenting Retaliation, Color of Law Violations & Explicit Denial of Representation," dated February 28, 2025. [*Id.*at 18-20] The February 17 affidavit is also filed in this action. [DE 1-2, p 11] Both affidavits present grievances with his probation supervision, including his complaints about the psychiatric evaluation, alleged denial of counsel, and alleged denial of access to his records. [Ex. 1, pp 17-20]

Also on March 26, 2025, Plaintiff filed a "Supplemental Motion for Continuance, Remote Appearance, and Resolution of Outstanding Issues Including Counsel Appointment." [*Id.* at 5-15] In this motion, Plaintiff references this federal litigation, which he asserts "directly involves and intersects with the factual and procedural posture" of his Union County case. [*Id.* at 5] Plaintiff also contends that this federal litigation presents a conflict which makes it "difficult or impossible" for him to travel to Union County, North Carolina, for the April 14, 2025, hearing. [*Id.* at 5-6] Plaintiff also asserts that the issue of "whether the post-transfer conditions imposed in Virginia, including psychological

evaluations, exceed the authority granted under ICAOS Rule 4.103-1 and improperly alter the original plea terms." [*Id.* at 6] Plaintiff also submitted an "Exhibit A" to his motion, which is a letter dated January 13, 2025, to Virginia Department of Corrections official Rebecca Hamilton, outlining concerns about the February 10 psychological evaluation and requesting clarification of probation terms. [*Id.* at 7-10]

On April 14, 2025, Union County Superior Court Judge Adam Elkins conducted a hearing, and entered an order denying "all of [Plaintiff's] motions filed," and allowing attorney Edward Martin's motion to withdraw as counsel. [*Id.* at 1-3] Plaintiff is currently scheduled to appear in Union County Superior Court on December 15, 2025, for a review hearing to assess his compliance with the terms of his conditional discharge. [*Id.* at 37, 39]

### *Plaintiff's Allegations*

The allegations in the instant case appear to be substantively identical to those raised by Plaintiff in his March 26, 2025, filings in Union County Superior Court. Plaintiff's Docket Entries 1-1, 1-2, and 1-3, when liberally construed, suggest that Plaintiff's claims center on his objections to a psychological evaluation by Virginia Probation Officer Rebecca Harrison. Plaintiff contends the evaluation was not an original term of his plea or conditional discharge agreement. [DE 1-2 at p. 7, ¶ II(2)] Plaintiff speculates that the results of the evaluation have been, or will be, disseminated to various law enforcement agencies, and hypothesizes that the Union County District Attorney's Office may have already received a copy. [DE 1-2 at p. 11, ¶ 2] Plaintiff also believes the evaluator used manipulative or coercive questioning techniques and expresses concern that the evaluation

will be misrepresented in legal proceedings to justify retaliatory action, including institutionalization or deprivation of rights. [DE No. 1-2 at p. 12, ¶ 3, 5]

Citing various sections of Health Insurance Portability and Accountability Act (HIPAA), Plaintiff requests the "HIPAA compliance officer" for each defendant both provide a copy of the evaluation and facilitate its destruction. [DE 1-3 at p. 2] Taken together, these filings appear to allege a due process violation stemming from the imposition of a psychological evaluation "not included in the original plea agreement or conditional discharge agreement." [DE No. 1-2 at p. 7, ¶ II(2)]

## LAW AND ARGUMENT

Plaintiff's claims are unclear. While Plaintiff cites HIPAA and requests access to, and destruction of, his psychological evaluation, his filings do not assert a cognizable HIPAA claim. Rather, they appear to rest on the speculative assertion that protected health information has been, or will be, improperly disseminated, which he frames as a due process concern or basis for injunctive relief.

## I.    LEGAL STANDARD

### A. Rule 12(b)(1)

Under Rule 12(b)(1), this Court must dismiss all or part of a complaint over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This threshold question shall be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). A plaintiff has the burden of proving that jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

8

### B. Rules 12(b)(2) and 12(b)(5)

A challenge to personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is a question of law, and the plaintiff bears the ultimate burden of proving jurisdiction. *See Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 396 (4th Cir. 2003). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. [S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co*., 484 U.S. 97, 104 (1987) (internal quotation omitted).

A motion under Rule 12(b)(5) challenges the sufficiency of service of process. *See* Fed. R. Civ. P. 12(b)(5). "When the process gives the defendant actual notice of the pendency of the action, the rules . . . are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc*., 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Id*. The plaintiff bears the burden of establishing that process properly has been served. *See Mylan Lab'ys, Inc. v. Akzo, N.V*., 2 F.3d 56, 60 (4th Cir. 1993) (holding the plaintiff must prove service of process if challenged).

### C. Rule 12(b)(6)

Rule 12(b)(6) allows a defendant to move for dismissal of a claim when a plaintiff

fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A complaint must contain sufficient factual allegations, which accepted as true, state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

Well-pleaded allegations are taken as true, including all reasonable inferences therefrom, and the complaint is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). However, legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Additionally, while *pro se* pleadings are to be construed liberally, *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999), "[t]he Court cannot act as a *pro se* litigant's advocate and develop, *sua sponte*, statutory and constitutional claims that the litigant failed to clearly raise on the face of the complaint." *Gonzalez v. Vilsack*, Civil Action No. 3:18cv459, 2021 U.S. Dist. LEXIS 52587, at *9 (E.D. Va. Mar. 19, 2021) (cleaned up).

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER THE NORTH CAROLINA DEFENDANTS

Plaintiff's claims must be dismissed for lack of personal jurisdiction. As explained below, the North Carolina Department of Adult Supervision is not a legal entity, Plaintiff has not effectuated proper service on the North Carolina Defendants, and neither Virginia's long-arm statute nor the Due Process Clause provide a basis for asserting personal jurisdiction over any North Carolina state agency or official in this case.

### A.    The North Carolina Department of Adult Supervision is not a legal entity.

Plaintiff's Complaint names as a Defendant the "North Carolina Department of Adult Supervision" and provides its location at the North Carolina Department of Public Safety. However, no such entity as the North Carolina Department of Adult Supervision exists under North Carolina law.

The agency responsible for probation in North Carolina is the Division of Community Supervision, which operates within the North Carolina Department of Adult Correction (NCDAC). The North Carolina Department of Public Safety (NCDPS) and the NCDAC are two distinct state agencies. In January 2022, the NCDAC was formally separated from NCDPS and operates independently. *See* N.C. Gen. Stat. § 143B-1440 *et seq*. To the extent Plaintiff is attempting to sue the North Carolina agency responsible for probation supervision, the proper entity would be the NCDAC, not NCDPS or the non-existent Department of Adult Supervision.

In North Carolina, in the absence of a statute, "the capacity to be sued exists only in persons in being." *McPherson v. First & Citizens Nat. Bank of Elizabeth City*, 240 N.C. 1, 18, 81 S.E.2d 386, 397 (1954). Entities that do not exist cannot be sued or served with legal

11

process. *See Henderson v. Fairfax-Falls Church Cmty Serv. Bd.*, No. 1:18-CV-825, 2018 WL 6037522, at *2 (E.D. Va. Nov. 15, 2018), *aff'd sub nom. Henderson v. Fairfax-Falls Church Cmty. Servs. Bd.*, 771 F. App'x 205 (4th Cir. 2019) ("An entity that does not have capacity to be sued is outside the personal jurisdiction of the court."). There is no North Carolina statute creating an entity called Department of Adult Supervision. Thus, Plaintiff's claims against the North Carolina Department of Adult Supervision must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

### B. Plaintiff has not effectuated proper service.

Federal Rule of Civil Procedure 4(j)(2) governs service of process upon state agencies. That rule provides that a state agency "must be served by" either: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). North Carolina law allows service of process on a state agency defendant by serving its process agent or, if no process agent has been appointed, by serving the Attorney General or a deputy or assistant attorney general. N.C. Gen. Stat. Ann. 1A-1, 4(j)(4).

In this case, summonses were issued to the North Carolina Defendants to be served via U.S. Marshal. [DE 8] On May 14, 2025, a Process Receipt and Return was filed on the docket in this case, indicating that the summons addressed to "North Carolina Department of Public Safety Division of Adult Correction and Juvenile Justice" was served by U.S. Marshal on May 12, 2025, upon Norlan Graves, identified as "Chief Deputy General Counsel." [DE 35] Included in this filing is a Proof of Service, with the same information,

on a form bearing the file number of an unrelated matter in the Eastern District of North Carolina. [*Id.*]

Similarly, on May 27, 2025, a Process Receipt and Return was filed on the docket in this case, indicating that the summons addressed to "Union County District Attorney's Office Judicial District 20B Union County Courthouse" was served by U.S. Marshal on May 13, 2025, upon Mary Beth Usher, identified as "Chief Ass. District Att." [DE 41]

As noted above, the North Carolina Department of Adult Supervision does not exist. However, even if the Court were to allow Plaintiff to amend his pleading to reflect the intended defendant, service is still improper. Neither the NCDAC nor the Union County District Attorney's Office have a chief executive officer; therefore, service must be made in adherence to the North Carolina Rules of Civil Procedure. North Carolina's Process Agent Directory is maintained by the North Carolina Attorney General's Office at https://ncdoj.gov/legal-services/legal-resources/process-agent-directory/. Neither Norlan Graves nor Mary Beth Usher are authorized process agents for their respective agencies, nor are they the Attorney General or a deputy or assistant attorney general.

Accordingly, service of Plaintiff's Complaint was improper because the Marshals did not serve a person authorized to receive service of process, and the Complaint is subject to dismissal pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure.

### C. Neither Virginia's long-arm statute nor the Due Process Clause provide a basis for personal jurisdiction.

Plaintiff does not allege federal jurisdiction based upon diversity of citizenship. [DE 1, p 4; DE 1-4] Instead, Plaintiff asserts subject matter jurisdiction based upon federal

question. [*Id.*] To determine whether personal jurisdiction exists over a nonresident defendant, courts apply a two-step inquiry. First, the exercise of jurisdiction must be authorized by Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1. Second, the exercise of jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment, requiring minimum contacts and that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); s*ee also Potomac Auto Mall Holdings, Inc. v. Blue Clover Fin., LLC*, No. 1:20-cv-865, 2020 WL 6946599 (E.D. Va. Nov. 24, 2020).

Virginia's long-arm statute permits the exercise of personal jurisdiction over a nonresident only if that party "acts" within the Commonwealth in one of the specifically enumerated ways. Va. Code Ann. § 8.01-328.1(A). The statute requires an affirmative act by the defendant that either occurs in Virginia or causes a direct injury in Virginia that arises from the act. *Id*. Here, Plaintiff alleges no facts that would bring the North Carolina Defendants within Virginia's long-arm statute. Thus, Plaintiff fails to satisfy even the threshold requirement of "acts" under § 8.01-328.1(A).

Moreover, neither North Carolina Defendant qualifies as a "person" within the meaning of Virginia's long-arm statute. The term "person" includes "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association or any other legal or commercial entity." Va. Code § 8.01-328. Governmental entities of a sister state are not clearly included in that definition, and do not fall within the scope of the statute unless their conduct satisfies both the statutory text and constitutional

14

due process. *City of Virginia Beach, Va. v. Roanoke River Basin Ass'n*, 776 F.2d 484, 488 (4th Cir. 1985). That is not the case here.

Finally, even if jurisdiction were theoretically available under Va. Code. Ann. § 8.01-328.1 (it is not), asserting jurisdiction over these North Carolina state agencies would violate the Due Process Clause of the Fourteenth Amendment. The North Carolina Defendants have not purposefully availed themselves of the privileges of conducting business in Virginia. There are no facts showing that the North Carolina Defendants should have anticipated being hauled into court in this forum. Therefore, subjecting them to litigation in Virginia would be fundamentally unfair and inconsistent with controlling constitutional standards.

Because Plaintiff has not alleged any qualifying "act" under the long-arm statute, because neither North Carolina Defendant is a "person" within the statute's meaning, and because exercising jurisdiction would offend due process, this Court should dismiss the claims against the North Carolina Defendants pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## III.   PLAINTIFF'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT

Even if this Court found it had personal jurisdiction over the North Carolina Defendants, it nonetheless lacks subject matter jurisdiction. The Eleventh Amendment to the United States Constitution generally bars suits in federal court against a non-consenting state and its agencies. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

100 (1984). Neither a state nor its officials acting in their official capacities are considered "persons" subject to liability under 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

There are three narrow exceptions to Eleventh Amendment immunity. First, a state may voluntarily waive its immunity and consent to suit in federal court. *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247 (2011). Second, Congress may abrogate state sovereign immunity when acting pursuant to a valid exercise of power. *Id.* Finally, a plaintiff may sue a state official in their official capacity for prospective injunctive relief to prevent an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123 (1908). None apply here.

Plaintiff has not plead that North Carolina has waived its sovereign immunity or that Congress has abrogated it. In addition, the *Ex parte Young* exception does not apply to state agencies, it only applies to state officials. *See, e.g., Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012).

Even if the Court were to allow Plaintiff to amend his pleading to name the NCDAC as a defendant, it is plainly an agency of the State of North Carolina. So too is the Union County District Attorney's Office. *See Davenport v. Keith*, No. 2:14-CV-36-D, 2014 WL 5790970, at *1 (E.D.N.C. Nov. 6, 2014) ("Finally, the Eleventh Amendment bars plaintiff's claims for damages against [the District Attorney] in his official capacity and against the District Attorney's Office.") Because Plaintiff did not name any North Carolina state officials as defendants, the *Ex parte Young* exception cannot apply in this case, and Plaintiff's claims against the North Carolina Defendants are barred by the Eleventh

16

Amendment.

## IV.    PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL

Even if this Court found it had both personal and subject matter jurisdiction, Plaintiff's Complaint would nonetheless be subject to dismissal under the doctrine of collateral estoppel. Under that doctrine, a party is precluded from relitigating issues that have already been fully and fairly adjudicated in a prior proceeding. *See Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008). As the Fourth Circuit has held, issue preclusion "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (internal citation omitted) (brackets in the original).

Federal courts apply the collateral estoppel rules of the state in which the prior judgment was rendered. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481–82 (1982); *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995). Because the underlying proceeding here occurred in North Carolina, its law governs. Under North Carolina law, issue preclusion applies when the following conditions are met: (1) the issue is identical to one previously litigated; (2) the issue was actually litigated; (3) the issue was necessary to the prior judgment; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate. *U.S. Fire Ins. Co. v. Se. Airmotive Corp.*, 102 N.C. App. 470, 472, 402 S.E.2d 466, 468  (1991).

Here, Plaintiff seeks to relitigate factual and legal issues that were raised and resolved in his ongoing criminal proceeding in Union County Superior Court. Specifically, Plaintiff relies on a February 17, 2025, "Affidavit Documenting Coercion & Denial of Legal Representation" as the basis for his claims in this civil action. This exact affidavit and its allegations were the subject of the motions Plaintiff filed in the North Carolina proceeding, where he sought relief on the same grounds.

Additionally, Plaintiff acknowledges that this federal lawsuit "directly involve[s] and intersect[s] with the factual and procedural posture" of the state court case, and he further describes an "overlap of jurisdictional and legal issues."

On April 14, 2025, Union County Superior Court Judge Adam Elkins conducted a hearing on Plaintiff's motions as well as his attorney's motion to withdraw. While the record is not clear whether Plaintiff appeared, either in-person or remotely, at that hearing, the record does reflect he had notice of the hearing. His March 26, 2025, motions reference the upcoming hearing and request to appear remotely. Curiously, Plaintiff expresses confusion as to whether a subpoena is required for his attendance at a hearing on his own motions.

In any event, Judge Elkins denied all of Plaintiff's motions, thereby adjudicating the issues raised here, and foreclosing the relitigation of issues of fact or law in this lawsuit that are identical to issues raised in Union County Superior Court. Because the issues in this case were fully raised and resolved in that proceeding, and Plaintiff had both notice and opportunity to be heard, collateral estoppel applies.

## V.    PLAINTIFF FAILS TO STATE A CLAIM

Even if all of the above doctrines were inapplicable, Plaintiff fails to state a claim. First and foremost, Plaintiff's Complaint fails to satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).Plaintiff's Complaint fails to comply with Rule 8. Although it is clear that Plaintiff is upset with the supervision of his probation by Virginia authorities, his Complaint fails to provide a "plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

First, Plaintiff directs the Court and Defendants to his "Complaint Briefing Motion," but does not provide such a document. Plaintiff's attachments appear to be documents filed in other courts in other jurisdictions, and they do not give the North Carolina Defendants fair notice of the facts and legal basis upon which their liability rests. *See Twombly*, 550 U.S. at 555. Plaintiff makes no factual allegations against the North Carolina Defendants that support the elements of any cognizable legal claim, and his Complaint is subject to dismissal on that basis alone.

Plaintiff also fails to state a claim for the specific reasons set out below.

### A.  HIPAA does not create a private right of action.

Plaintiff references HIPAA in his filings. To the extent his claim is based upon a purported violation of HIPAA, the statute does not provide a private right of action and limits enforcement to the Secretary of Health and Human Services. *See* 42 U.S.C. § 1320d-5. The Fourth Circuit has held that a plaintiff "has no private right of action under HIPAA." *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021). Even if HIPAA provided a cause of

action (which it does not), Plaintiffs' conjectural, conclusory allegations fail to meet the pleading standard under *Iqbal,* 556 U.S. at 678. Even when interpreting his filings liberally, Plaintiff fails to provide the evidence necessary to clear the pleading standard. *See id.*

### B. The psychological evaluation requirement does not violate due process and was lawfully imposed under the Interstate Compact.

The Interstate Compact for Adult Offender Supervision (ICAOS) is a formal agreement between all fifty states allowing for the transfer of probation supervision between states for adult offenders.[2] To the extent Plaintiff alleges a due process violation based on the imposition of a psychological evaluation not expressly referenced in his North Carolina conditional discharge or plea agreement, his claim fails under the governing framework of the ICAOS.

Pursuant to the terms of the ICAOS, North Carolina, the "sending state," retains revocation and enforcement authority over Plaintiff's probation while Virginia, the "receiving state," supervises the probation. Pertinent here, ICAOS Rule 4.101 addresses the manner and degree of supervision in the receiving state, Virginia: "A receiving state shall supervise offenders consistent with the supervision of other similar offenders sentenced in the receiving state, including the use of incentives, corrective actions, graduated responses, and other supervision techniques." ICAOS Rule 4.101. Further, Rule 4.103 concerns conditions of supervision and provides that "[a]t the time of acceptance or

---

[2] The North Carolina General Assembly directed the Governor to enter into the Interstate Compact for Adult Offender Supervision in N.C. Gen. Stat. § 148-65.5 et seq. For a complete list of ICAOS Rules, see Interstate Commission for Adult Offender Supervision, ICAOS Rules (2025), available at https://interstatecompact.org/icaos-rules

during the term of supervision, the receiving state may impose a condition on an offender if that condition would have been imposed on an offender sentenced in the receiving state." ICAOS Rule 4.103(a). For further clarification, Section 3.3.3 of the ICAOS Bench Book for Judges and Court Personnel,[3] notes that "the receiving state may impose additional requirements on the supervised individual," and "failure to comply with such additional requirements, such as sex offender registration or *psychological testing*, could constitute grounds for retaking."[4]  ICAOC Bench Book § 3.3.3 (emphasis added).

At the outset, Plaintiff's potential due process claim appears to be directed at his probation officer in Virginia rather than the North Carolina Defendants. Nonetheless, the ICAOS expressly permits Virginia to impose post-acceptance requirements on Plaintiff such as a psychological evaluation so long as this condition is applied uniformly to both in-state and out-of-state supervisees. These additional conditions are within the receiving state's discretion and may form a basis for retaking if the supervised individual fails to comply.

Here, Plaintiff does not allege that the psychological evaluation requirement was applied to him in a manner different from how it is applied to similarly situated in-state or out-of-state supervisees. Rather, he challenges the imposition of any additional supervision conditions altogether. Because the ICAOC Rules expressly authorize the receiving state to

---

[3] The ICAOS Bench Book is available here: https://interstatecompact.org/bench-book
(last accessed July 24, 2025).

[4] https://interstatecompact.org/bench-book/ch3/3-3-3-post-acceptance-testing

impose additional requirements on the supervised individual, Plaintiff's objection to the psychological evaluation fails to state a due process claim.

### C. Prosecutorial Immunity bars Plaintiff's claims against the DA's Office.

Plaintiff has not alleged any specific conduct by the DA's Office. To the extent any of his claims could be construed as challenging actions taken by prosecutors in the course of initiating, pursuing, or managing the underlying criminal proceeding, such claims would be barred by the doctrine of absolute prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

As explained above, under the terms of the ICAOS, North Carolina retains exclusive revocation and enforcement authority over Plaintiff's probation. Any actions taken by the DA's Office in response to any alleged violation – including initiating revocation proceedings – are prosecutorial acts intimately associated with the judicial phase of the criminal process and therefore fall squarely within the scope of prosecutorial immunity.

### VI. *YOUNGER* ABSTENTION REQUIRES DISMISSAL

Finally, even if the Court were to reject all of the above defenses, it should nonetheless abstain. The abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), "rests on the fundamental precepts of equity and comity." *Golphin v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017). It prohibits federal courts from interfering with ongoing state criminal proceedings except in the most extraordinary of cases. *See Harper v. Pub. Serv. Comm'n of W.VA.*, 396 F.3d 348, 351–52 (4th Cir. 2005); *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996). "[C]ourts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and

23

will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43-44; *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 95 (4th Cir. 2022) ("Federal courts must show proper respect for state functions . . . . [And a] proper extension of such respect is taking judicial federalism seriously, and not losing sight of the fact that state courts are fully competent to decide issues of federal law." (citation modified).

To determine whether abstention is appropriate, courts apply a three-step analysis. First, the proceeding must be the type to which *Younger* applies. *Air Evac EMS, Inc.*, 37 F.4th at 96. If it does, the court must then apply three additional factors, knows as the *Middlesex* factors. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). These are whether the state proceeding is ongoing, implicates important state interests, and provides an adequate opportunity to raise federal claims. *Id.* The court then asks whether any exception to abstention applies. *Id.* All three elements of the inquiry are satisfied here.

First, Plaintiff's state court matter is an ongoing criminal proceeding. On June 14, 2024, Plaintiff and the State jointly moved to defer proceedings in his criminal prosecution pursuant to N.C. Gen. Stat. § 15A-1341(a4) for the purpose of allowing Plaintiff to demonstrate good conduct. [Ex. 1, pp 37-38] The Union County Superior Court deferred entry of judgment, placed Plaintiff on supervised probation for 18 months, and ordered Plaintiff to appear on December 15, 2025, for a hearing to determine whether he has fulfilled the terms and conditions of his probation. *Id*. Plaintiff is also subject to potential early recall if there is an alleged violation or other court order. *Id*. This ongoing supervision and potential for adjudication demonstrates that his criminal matter remains active, and the

Union County Superior Court retains jurisdiction. *See* Exhibit 2.

Second, the enforcement of criminal laws and probationary conditions implicates core state interests. "[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. 36, 49 (1986); *see also Nivens v. Gilchrist*, 319 F.3d 151, 154 (4th Cir. 2003). North Carolina's ability to supervise individuals under conditional discharge and to decide whether to dismiss or adjudicate guilt is an essential component of the state's administration of justice.

Third, Plaintiff has had, and continues to have, an adequate opportunity to raise his federal claims. The Fourth Circuit has emphasized "that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Gilliam*, 75 F.3d at 904. This is true here – Plaintiff has already presented arguments in motions in the state forum related to the alleged constitutional violations. Further, the state court remains open to receive and evaluate any further constitutional challenges Plaintiff may raise as part of his ongoing supervision or as the December 15, 2025, hearing approaches.

Finally, no exception to *Younger* is present here. Plaintiff has not alleged, nor does the record support, any claim of bad faith prosecution or any other extraordinary circumstance that would justify federal intervention. To the contrary, Plaintiff was afforded a significant opportunity to avoid a felony conviction through a conditional discharge extended at the discretion of the Union County District Attorney's Office. His decision to initiate federal litigation against that very office – despite having accepted the benefit –

only reinforces the impropriety of federal intervention.

Accordingly, because a federal court may not grant relief that would affect pending state proceedings absent extraordinary circumstances, this Court should abstain from interfering with his currently pending state court proceeding.

## **CONCLUSION**

For all of the above reasons, the North Carolina Defendants respectfully request the Court dismiss the Complaint against them.

This the 30th day of July 2025.

JEFF JACKSON
ATTORNEY GENERAL

/s/Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Phone: (919) 716-6800
Fax: (919) 716-6755
Email: eobrien@ncdoj.gov
*Special Appearance pursuant to*
*Local Rule 83.1(E)*

/s/Cassandra E. Sheehan VSB No. 87990
Cassandra E. Sheehan
Assistant Attorney General
Office of the Attorney General - Virginia
Criminal Justice & Public Safety
Division
202 North Ninth Street
Richmond, Virginia 23219
Phone: (703) 359-1117
Fax: (804) 786-4239
Email: csheehan@oag.state.va.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of July 2025, I electronically filed the foregoing Memorandum in Support of the North Carolina Defendants' Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such following to all counsel of record for the parties who participate in the CM/ECF system.

In addition, I hereby certify that I have mailed to document, postage prepaid, to the following non-filing user on July 30, 2025:

> Antonio Gregory Brooks
> 2701 Park Center Drive #905B
> Alexandria, VA 22302
> *Plaintiff Pro Se*

This the 30th day of July, 2025.

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice
